UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLENE SANCHEZ,<br>Plaintiff,<br>v.<br>HUB GROUP INC., et al.,<br>Defendants. | No. 2:25-cv-03118-DC-CKD<br><br><u>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANT SCOTT GRAY'S MOTION TO DISMISS AS MOOT</u><br><br>(Doc. Nos. 9, 10) |

This matter is before the court on Plaintiff's motion to remand this action to the San Joaquin County Superior Court. (Doc. No. 10.) Pursuant to Local Rule 230(g), the pending motion was taken under submission to be decided on the papers. (Doc. No. 12.) For the reasons explained below, the court will grant Plaintiff's motion to remand and deny Defendant Scott Gray's motion to dismiss as having been rendered moot by this order.

**BACKGROUND**

On September 16, 2025, Plaintiff Darlene Sanchez filed this action in the San Joaquin County Superior Court against her employer, Defendant Hub Group Inc., and its related subsidiaries, Defendant Hub Group Trucking Inc., and Defendant Hub Group Trucking California, LLC, ("the Hub Defendants"), and her former supervisor, Defendant Scott Gray. (Doc. No. 1.)

In her complaint, Plaintiff alleges the following. The Hub Group Defendants own and

operate truck terminals throughout the United States. (Doc. No. 1 at 65.) In May 2022, Plaintiff was employed as a truck driver at a terminal ("the terminal") owned by the Hub Defendants in Stockton, California. (*Id.*) Plaintiff was employed as a "final destination" delivery driver, which required her to transport shipping containers from facilities to their final destinations. (*Id.*)

Plaintiff generally alleges a history of mistreatment of female employees at the terminal by the Hub Defendants and their employees. (*Id.* at 67–69.) Plaintiff alleges a pattern of repeated sexual harassment by another driver Muhammed Mustaq against Plaintiff and other female employees which occurred at the Hub Defendants' terminal "in open view of Plaintiff's supervisors and other management-level employees," including in front of Defendant Gray, all of whom failed to take action to protect her. (*Id.* at 68–69, 72–73.) In the prior instances of harassment or assault by Mustaq against Plaintiff, Plaintiff declined to report Mustaq out of fear that she would be publicly reprimanded, stemming from an incident in 2022. (*Id.* at 69.) Specifically, Plaintiff alleges she was publicly reprimanded, shamed, and punished with removal from the work schedule in 2022, when she reported a safety incident to her supervisors. (*Id.* at 65–66.)

Specific to this lawsuit, Plaintiff alleges that Defendants failed to prevent or address the sexual assault of Plaintiff by Mustaq, who sexually assaulted her while she was cleaning her trailer on September 23, 2023. (*Id.* at 69.) After the alleged sexual assault, Plaintiff first called the police, then reported the sexual assault to her supervisor, Defendant Gray. (Doc. No. 70.) Plaintiff alleges Defendant Gray "expressed doubts" about her report and "expressed skepticism" that Mustaq would have sexually assaulted Plaintiff, who identifies as a "Caucasian lesbian woman." (*Id.* at 70.) Plaintiff alleges that following this conversation, Defendant Gray "made no attempt to inform the police" about the sexual assault and did not "take any other steps to protect Plaintiff from further sexual violence," and to the contrary, ordered Plaintiff to complete her scheduled deliveries, although he knew or should have known that Plaintiff's alleged assailant was scheduled to be working at the same location. (*Id.*) Plaintiff alleges she feared for her safety and rather than complete her deliveries, she waited for the Stockton Police Department to arrive. (*Id.*)

Plaintiff alleges that following the sexual assault on September 23, 2023, the Hub

Defendants' employees subsequently spread "false rumors" about Plaintiff, including rumors that the assault had not happened and Plaintiff had lied. (*Id.* at 71.) The Hub Defendants did not intervene to address these rumors. (*Id.*) It is not clear from the complaint whether Defendant Gray instigated or participated in the spread of these alleged rumors. Plaintiff alleges the Hub Defendants "took no action to investigate, reprimand, discipline or otherwise rebuke" Defendant Gray's actions. (*Id.*)

Based on those allegations, Plaintiff asserts the following claims against all defendants: (1) hostile work environment and sexual harassment in violation of California's Fair Employment and Housing Act ("FEHA"); (2) negligent infliction of emotional distress; and (3) intentional infliction of emotional distress. (*Id.* at 72–77.) Against the Hub Defendants only, Plaintiff asserts two additional claims: (1) failure to prevent harassment in violation of FEHA; and (2) negligent hiring, retention and supervision. (*Id.*)

On September 16, 2025, the Hub Defendants filed an answer in state court. (*Id.* at 83–84.) On October 27, 2025, the Hub Defendants filed a notice of removal, removing this action on the basis of diversity jurisdiction. (Doc. No. 1.) At the time the Hub Defendants filed the notice of removal, Defendant Gray had not yet been served.[1] (*Id.* at 4–5.) Defendant Gray filed a motion to dismiss the claims brought against him in this action on November 26, 2025. (Doc. No. 9.)

The same day, on November 26, 2025, Plaintiff filed a motion to remand this action to the San Joaquin County Superior Court on the grounds that this court lacks subject matter jurisdiction because Plaintiff and Defendant Gray are both California citizens. (Doc. No. 10.) The Hub

---

[1] In their notice of removal, the Hub Defendants assert that removal is proper in part because they removed this action to this court before Defendant Gray was served—which is a practice district courts refer to as "snap removal." (Doc. Nos. 1 at 4–5; 4 at 4–15); *see Est. of Joseph v. Sub Sea Sys., Inc.*, No. 2:25-cv-00496-DAD-AC, 2025 WL 2307838 (E.D. Cal. Aug. 11, 2025). Because the court finds Defendant Gray is a non-diverse party who was not improperly joined, the matter will be remanded. Thus, the court need not resolve the issues relating to snap removal or the amount in controversy. *See Serrato v. WestRock Servs., LLC*, No. 1:26-cv-01345-KES-EPG, 2026 WL 1045690, at *4 (E.D. Cal. Apr. 17, 2026), *report and recommendation adopted*, No. 1:26-cv-01345 KES EPG (PC), 2026 WL 1257844 (E.D. Cal. May 7, 2026) (finding that snap removal applies only to cases where complete diversity is present and stating that "snap removal does not confer jurisdiction where there is not otherwise diversity jurisdiction"); *Carrick v. Peloton Interactive, Inc.*, No. 24-cv-00212-PCP, 2024 WL 3378332, at *3 (N.D. Cal. July 10, 2024) (noting that complete diversity is required even where snap removal is available).

Defendants filed an opposition to the motion on January 16, 2026. (Doc. No. 14.) Plaintiff filed a reply thereto on January 26, 2026. (Doc. No. 15.)

## LEGAL STANDARD

### A. Removal Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A defendant may remove any action from state court to federal court when the federal court has original jurisdiction over the matter. 28 U.S.C. § 1441(a).

Removal to federal court is proper when a case filed in state court poses a federal question or where there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a).

The party removing the action has the burden of establishing grounds for federal jurisdiction by a preponderance of the evidence. *Hamsen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018) (citing *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106–07 (9th Cir. 2010)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal statutes are strictly construed against jurisdiction. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 550 (9th Cir. 2018) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). A federal court must remand the case to state court if there is any doubt as to right of removal. *Id.*; *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

A party's notice of removal must contain "a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). "By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure," and a "statement 'short and plain' need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84, 87 (2014); *see also Ramirez-Duenas v. VF Outdoor, LLC*, No. 1:17-cv-0161-AWI-SAB, 2017 WL 1437595, at *2 (E.D. Cal. Apr. 4, 2017) ("The notice of removal may rely on the allegations of the complaint and need not be accompanied by any extrinsic evidence.").

/////

**B. Fraudulent Joinder**

"In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Grancare,* 889 F.3d at 548 (citing *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)). There are two ways to show fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (internal citations omitted). If there is a "possibility that a state court would find that the complaint states a cause of action against any of the [non-diverse] defendants," the court must find that a defendant was properly joined and remand the case to state court. *Grancare*, 889 F.3d at 549 (citing *Hunter*, 582 F.3d at 1046).

The party opposing remand bears a "heavy burden" of proving fraudulent joinder, and there is a presumption against fraudulent joinder. *Hunter*, 582 F.3d at 1044. "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials, Inc. v. Dow Chemical Corp*., 494 F.3d 1203, 1206 (9th Cir. 2007). The court must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party. *Cosby v. Autozone, Inc*., No. 2:08-cv-505-DAD-LKK, 2008 WL 2875355, at *2 (E.D. Cal. July 23, 2008). "[T]he test for fraudulent joinder and for failure to state a claim under [Federal Rule of Civil Procedure] 12(b)(6) are not equivalent." *Grancare*, 889 F.3d at 549. "A claim against a defendant may fail under Rule 12(b)(6), but that defendant has not necessarily been fraudulently joined." *Id.* Further, "[r]emand must be granted unless the defendant establishes that plaintiff could not amend her pleadings to cure the purported deficiency." *Reyes v. FCA US LLC*, No. 1:20-cv-00833-DAD-SKO, 2020 WL 7224286, at *2 (E.D. Cal. Dec. 8, 2020) (citing *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009)).

/////

/////

/////

/////

## ANALYSIS

### A. Plaintiff's Motion to Remand[2]

In her motion to remand, Plaintiff argues that her claims against Defendant Gray are colorable, and he is not fraudulently joined in this case. (Doc. No. 10 at 14.) To prevail on her motion to remand, Plaintiff need only show that at least one of those claims is indeed colorable for the court to find Defendant Gray properly joined. Therefore, the court need not address Plaintiff's remaining claims against Defendant Gray for negligent infliction of emotional distress and intentional infliction of emotional distress and will analyze only Plaintiff's claim against Defendant Gray for hostile work environment and harassment.

To state a valid claim for harassment, Plaintiff must allege that (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the defendant is liable for the harassment. *Galvan v. Dameron Hosp. Ass'n*, 37 Cal. App. 5th 549, 563 (2019). "Whether a work environment is reasonably perceived as hostile or abusive 'is not, and by its nature cannot be, a mathematically precise test.'" *Bailey v. S.F. Dist. Att'y's Off.*, 16 Cal. 5th 611, 628 (2024) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993)). "The working environment must be evaluated in light of the totality of the circumstances." *Bailey*, 16 Cal. 5th at 628 (citation omitted). These circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* Actionable harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 629 (quoting *Harris*, 510 U.S. at 21). An isolated incident of harassment, if extremely serious, can create a hostile work environment. *Id.*

Further, when brought under FEHA, "individuals may be liable for harassment," as

---

[2] The court begins its analysis with Plaintiff's motion to remand because that motion challenges this court's jurisdiction and must be resolved first.

"FEHA provisions, such as those involving harassment, do, indeed, apply to individual persons as well as employers." *Reno v. Baird*, 18 Cal. 4th 640, 659–60 (1998); Cal. Gov't Code §§ 12940(j)(3) ("An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action"); *McCleney v. Wyndham Vacation Ownership, Inc.*, No. 2:22-cv-01927-FLA-SK, 2023 WL 4745741, at *6 (C.D. Cal. July 25, 2023) (finding "it is possible for [p]laintiff to assert a claim under FEHA against [Defendant], even as a supervisor") (citing to *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 711 (2009)); *Nutall v. Tesla, Inc.*, No. 2:26-cv-02006-DJC-SCR, 2026 WL 2364520, at *3 (E.D. Cal. Aug. 14, 2026) (granting remand and stating there was "no statutory bar" precluding plaintiff from bringing a FEHA harassment suit against defendant supervisor).

Indeed, "personnel management decisions can be evidence of harassment when they are used as the means to communicate a harassing message or create a hostile work environment" and an employer's discriminatory conduct can also contribute to a hostile work environment, even where harassing comments are not extreme. *Roby*, 47 Cal. 4th 708 (upholding jury verdict finding supervisor liable for harassment under FEHA); *see Cornell v. Berkeley Tennis Club*, 18 Cal. App. 5th 908, 941 (2017) (holding that a supervisor's harassing comments "must be viewed in context" with an employer's other conduct when determining whether harassment is severe or pervasive). Thus, whether a defendant can be liable for harassment depends not only on the supervisor defendant's alleged comments, but also on the employer defendant's alleged harassing conduct.

In opposing Plaintiff's motion to remand, the Hub Defendants argue that Plaintiff cannot state a valid claim for harassment because Defendant Gray did not "personally engage in any harassing conduct" and that his alleged conduct is not "sufficiently severe or pervasive harassment." (Doc. No. 14 at 12.) The Hub Defendants also argue that any inaction by Defendant Gray amounts to no more than personnel management and that he cannot be held liable for directing Plaintiff to return to work after the alleged assault. (*Id.*) The Hub Defendants further argue that "Plaintiff cannot plead additional allegations to state a viable claim." (*Id.*)

Conversely, Plaintiff maintains that her claim against Defendant Gray is valid, including because (1) she is a member of a protected class; (2) she was subject to unwelcome harassment when she attempted to report the sexual assault to Defendant Gray, who allegedly made unwelcome comments about the veracity of her sexual assault report and "ordered" her to return to work at the same location as her alleged assailant; (3) Defendant Gray allegedly challenged the veracity of her report on the basis of her gender and sexual identity; (4) as a result of the alleged harassment, Plaintiff has been unable to work and "has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish"; and (5) Defendant Gray can be held personally liable for the harassment. (Doc. Nos. 1 at 70, 73; 15 at 6–7.) Plaintiff does allege several facts that could support the possibility of a viable harassment claim; specifically, plaintiff alleges that prior to the alleged assault on September 23, 2023, her alleged assailant Mustaq was sexually harassing and assaulting her and other female employees, which went unaddressed by Defendant Gray and the Hub Defendants. (*Id.* at 68–69.) And Plaintiff alleges that immediately following the sexual assault, other employees at the terminal began "spreading false rumors . . . that she had not been attacked and had lied about what happened." (*Id.* at 71.)

In her reply, Plaintiff argues specifically that "there is at least some possibility that Plaintiff will prevail on her claim against Gray based on his offensive comments." (Doc. No. 15 at 3); *see Verduzco v. Ford Motor Co.*, No. 1:13-cv-01437-LJO, 2013 WL 5739094 (E.D. Cal. Oct. 22, 2013) ("The standard is not whether plaintiffs will actually or even probably prevail on the merits, but whether there is any possibility that they may do so.") (quoting *Bellecci v. GTE Sprint Commc'ns. Corp.*, 2003 WL 151538 at *3 (N.D. Cal. 2003)). Although Plaintiff's claim for harassment is likely insufficient as pled in the complaint, given the minimal facts alleged regarding Defendant Gray, the court agrees that Plaintiff could allege additional facts to cure any such pleading deficiency. *See Chavolla v. Darling Ingredients Inc.*, No. 2:25-cv-01031-DAD-SCR, 2025 WL 3771349, at *9 (E.D. Cal. Dec. 31, 2025) (granting leave to amend to join defendant supervisor and remand due to lack of complete diversity where "despite the limited factual allegations advanced in support of plaintiff's claim for harassment against [the proposed

defendant], the court is unable to conclude that this new harassment claim is facially invalid").

The Hub Defendants have not cited any authority that precludes Plaintiff from amending her complaint to allege additional facts sufficient to state a hostile work environment and sexual harassment claim against Defendant Gray. Rather, the Hub Defendants contend that Plaintiff has not alleged facts sufficient to support her claim and has not alleged that Defendant Gray "personally engaged in any harassing conduct." (Doc. No. 14 at 11.) However, courts in this circuit have concluded that "if a defendant simply argues that plaintiff has not pled sufficient facts to state a claim, the heavy burden of showing fraudulent joinder has not been met." *Nutall*, 2026 WL 2364520, at *3 (quoting *Ontiveros v. Michaels Stores, Inc.*, No. 12-cv-09437-MMM-FMO, 2013 WL 815975, at *5 (C.D. Cal. Mar. 5, 2013)).

Further, the court finds unavailing the Hub Defendants' argument that the court should find Defendant Gray fraudulently joined because his actions were personnel management decisions that "cannot support individual supervisor liability." (Doc. No. 14 at 11). The Hub Defendants have not shown that Plaintiff is precluded from amending her complaint to more clearly allege that Defendant Gray's conduct may be interpreted as enforcing the harassment Plaintiff allegedly suffered. *See Cornell*, 18 Cal. App. 5th at 941 (rejecting argument that defendant supervisor's alleged harassing conduct constituted "non-actionable 'personnel management'" and reversing grant of summary judgment for defendant on FEHA harassment claim because the supervisor's "official actions can be interpreted as enforcing the negative weight-based messages his comments conveyed").

In sum, although Plaintiff's claim for hostile work environment and sexual harassment is likely deficiently pled in the operative complaint, it remains possible that Plaintiff could amend her complaint to allege additional facts to satisfy the requisite elements. Therefore, Defendant Gray is not a fraudulent defendant. Because Plaintiff and Defendant Gray are both California citizens, complete diversity of citizenship as required under 28 U.S.C. § 1332 does not exist, and this court lacks subject matter jurisdiction over this action.

Thus, the court will grant Plaintiff's motion to remand and deny as moot Defendant Gray's motion to dismiss this action.

**B. Attorneys' Fees**

Plaintiff requests an award of attorneys' fees she incurred as a result of removal. (Doc. No. 10 at 18–20.) District courts have the discretion to award attorneys' fees if the matter is remanded. 28 U.S.C. § 1447(c). A court should award attorneys' fees and costs under § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal" unless "unusual circumstances" are present. *Schiff v. Liberty Mut. Fire Ins. Co.*, 784 F. App'x 490, 492 (9th Cir. 2019) (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005)). The court finds that the Hub Defendants did not lack an objectively reasonable basis for seeking removal. Though the court finds that Defendant Gray is not a "sham defendant," Plaintiff's request for attorneys' fees will nevertheless be denied.

**CONCLUSION**

For the reasons explained above:

1. Plaintiff's motion to remand this action to the San Joaquin County Superior Court (Doc. No. 10) is GRANTED;
2. Defendant Gray's motion to dismiss (Doc. No. 9) is DENIED as having been rendered moot by this order;
3. This matter is remanded to the San Joaquin County Superior Court, pursuant to 28 U.S.C. § 1447(c); and
4. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **November 12, 2026**

Dena Coggins
United States District Judge